**UNITED STATES ex rel. LEE TILL SEEM
v. SHAUGHNESSY, Dist. Director of
Immigration & Naturalization.**

United States District Court
S.D. New York.
May 24, 1952.

Edward Hong, New York City, for relator.

Myles J. Lane, U. S. Atty., Lester Friedman, Dist. Counsel, Immigration and Naturalization Service, William J. Sexton, Asst. U. S. Atty., New York City, for respondent.

WEINFELD, District Judge.

The relator, Lee Till Seem, a native of China, arrived at the Port of New York via plane on January 25th, 1952, and applied for admission as a non-quota immigrant as the wife of a citizen of the United States.

8 U.S.C.A. § 204(a). She was in possession of an immigration visa duly issued to her by the American Consul at Hong Kong. Relator was ordered to Ellis Island for deferred inspection. On February 8th she was inspected and then held for a hearing before a Board of Special Inquiry pursuant to 8 U.S.C.A. § 152, which provides:

> "Every alien who may not appear to the examining immigrant inspector at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry."

The regulations promulgated to carry out the purposes of the statute require that "Boards of special inquiry shall determine all cases as *promptly*[1] as circumstances permit, due regard being had to the necessity for giving the alien a fair hearing." 8 C.F.R. 130.2. Section 153 of Title 8 requires the appointment of such Boards of Special Inquiry at various ports of arrival "as may be necessary for the *prompt*[2] determination of all cases of immigrants detained". To date no hearing has been conducted. The relator alleges that she has been unable to obtain any information with respect to a hearing or when one will be held.

The petition in support of the writ alleges that relator's husband, Wong How Dai, entered the United States in October 1936, at the Port of San Francisco, when he was admitted as a United States citizen, the son of a native United States citizen; that in May 1937, a Certificate of Identity relating to Chinese persons was issued to him by the Immigration Official in Charge in San Francisco; that Wong How Dai's citizenship was reaffirmed in August 1948, when, following a visit to China, he re-entered the United States, again at San Francisco, in possession of a United States passport.

The petitioner further alleges that she was married to Wong How Dai on October 14th, 1947, in a civil ceremony at Canton, China, which was witnessed by a Vice Consul of the United States, and that she has complied with all the requirements for ad-

1. Emphasis supplied.

2. Emphasis supplied.

mission as a non-quota immigrant. 8 U.S. C.A. § 204(a).

The basic allegations contained in the petition are uncontroverted in the Return to the Writ. It contains generalities concerning alleged frauds of a wide-spread nature by Chinese persons seeking entry at the Port of New York on a non-quota basis and the need for extensive investigation, resulting in a backlog of cases. As to the relator, it sets forth no evidential matter other than the statement "Information, now available, indicates * * * strong suspicion concerning the fraudulent claim presented by relator * * *." Not a single fact buttresses the charge. The only other direct reference to her is that the matter had been referred to the San Francisco District Office for further investigation since witnesses whose testimony or statements were desired reside in California.

In view of the vague and unsubstantiated charges, the United States Attorney was advised upon the oral argument of the writ that, if the facts had been omitted from the Return for security reasons, the Court would receive an affidavit in camera—and this was consented to. The affidavit has since been filed. No contention is made therein that the relator is excludable as a subversive alien upon any ground set forth in 8 U.S.C.A. § 137, as amended by the Internal Security Act of 1950. The information contained in the affidavit is unrelated to any security problem and it is so conceded therein. The sole stated ground for the submission of the affidavit in camera is that a premature disclosure of its contents may induce efforts to impede a pending investigation.

I am of the view that there was no real need to shroud this affidavit in secrecy since the direction of the Government's inquiry was necessarily disclosed upon the argument of the writ, when the Government conceded the validity of relator's marriage to Wong How Dai. However, out of deference to those who believe that its contents, if disclosed, may somehow prejudice the Government's position, I refrain from discussing details, limiting references to its general allegations.

The affidavit, while it suggests suspicious circumstances of a hearsay nature, which, if verified, may ultimately lead to evidence negating relator's claim to enter as the wife of an American citizen, nonetheless, again fails to submit facts or evidence to justify the continued restraint of the relator and the denial of a prompt hearing. As to the ultimate fact which the Government must establish to debar the relator, the affidavit contains this significant statement: "Of course, the difficulty lies in whether the Government will be able to develop sufficient evidence to establish the obvious [sic] fact."

The substance of the affidavit is an apologia to justify failure of the immigration authorities to move expeditiously in the conduct of investigations. Emphasis is placed upon the shortage of administrative and investigative personnel and the alleged inexperience of inspectors at the New York Port of Entry in matters relating to persons of Chinese descent who seek entry here by reason of relationship to American citizens. The need for investigation of this case in the San Francisco office is reiterated, but little is said which sheds light upon the relator's questioned status.

The relator was detained on February 8th, 1952; the investigation was not begun until March 24th, 1952—more than six weeks after the initial hearing before the examining inspector—and no information is submitted as to its progress other than the statement, "it is now hoped that the hearing * * * will be commenced within in a matter of weeks at most."

The Immigration Service is entitled to every reasonable opportunity to follow through on leads which it believes will be productive of results, but this may not be used as an excuse to detain one an unreasonable length of time on a mere allegation of suspicion, unsupported by evidential facts. Volume of work, personnel shortages and other related administrative problems may present an administrator with understandable difficulties; they do not, however, relieve him of his paramount duty to comply with and enforce the law. The Immigration Department has had more than ample opportunity to conduct its in-

vestigation and to afford the relator the prompt hearing provided for by law and regulation. Up to the present, four months since her arrival at the Port of New York, the relator has not been advised of the basis of her detention or the nature of the unconfirmed suspicions. To permit her continued detention under the present circumstances and without a hearing comes close to those concepts of State power which are abhorrent to our way of life.

The writ is sustained to the extent of enlarging the relator upon furnishing a bond and compliance with conditions in the order to be entered.[3] The Court will hear counsel with respect to the amount of the bond and conditions upon settlement of the order, which may be upon one day's notice.

---

3. United States ex rel. Mezei v. Shaughnessy, 2 Cir., 195 F.2d 964; 28 U.S.C. § 2243.